# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRANK GANGI, et al. | : | case no. 1:14-cv-10114 |
| | : | *consolidated with* |
| | : | case no. 1:14-cv-10115 |
| Petitioners, | : | case no. 1:14-cv-10116 |
| | : | case no. 1:14-cv-10117 |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |

## PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO QUASH IRS THIRD-PARTY SUMMONS

Joseph A. DiRuzzo, III
*Admitted Pro Hac Vice*
FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 Brickell Bay Drive, 32nd Floor
Miami, Florida 33131
305.350.5690 (O)
305.371.8989 (F)
jdiruzzo@fuerstlaw.com

# TABLE OF CONTENTS

I.      Background ..................................................................................................................1

   A.      Summons to Ed Taylor ....................................................................................1

   B.      Summons to South Coastal Bank ....................................................................1

   C.      Summons to John Postl ...................................................................................2

   D.      Summons to Oliver Fowlkes ...........................................................................2

   E.      Petitions to Quash ...........................................................................................3

   F.      New Jersey Litigation ......................................................................................3

II.     Applicable Law ...........................................................................................................5

III.    Legal Argument ...........................................................................................................5

   A.      Issue Preclusion ..............................................................................................5

      1.      Legal Distinctions Barring the Application of Issue Preclusion .........8

      2.      Factual Distinctions Barring the Application of Issue Preclusion ......14

   B.      Failure to Follow Administrative Procedures ................................................16

      1.      Violation of IRC 7602(c) ..................................................................16

      2.      Violation of IRC § 7605(b) ...............................................................18

   C.      The Affidavit is Stale and Boilerplate ..........................................................19

IV.     Conclusion .................................................................................................................21

CERTIFICATE OF SERVICE ..............................................................................................23

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

## TABLE OF AUTHORITIES

**Cases**

*Appleton v. Comm'r,* 140 T.C. No. 14 (2013) ........................................................10

*Commissioner v. Sunnen,* 333 U.S. 591 (1947) .......................................................10

*First Nat'l Bank of Pa. v. Comm'r,* 205 F.2d 82 (3d Cir.1953) ...............................12

*FleetBoston Fin. Corp. v. Alt,* 638 F.3d 70 (1st Cir. 2011) ........................................6

*Fruit of the Loom, Inc. v. Comm'r,* 72 F.3d 1338 (7th Cir. 1996) ...........................11

*Gangi v. United States,* 2011 WL 1363816 (D.N.J. Jan. 7, 2011) ...................... 4, 8, 18

*Gangi v. United States,* 453 F. App'x 255 (3d Cir. 2011). ..........................................5

*Huff v. Comm'r,* 138 T.C. 258 (2012) ......................................................................19

*Mangella v. Evanston Ins. Co.,* 700 F.3d 585 (1st Cir. 2012) ................................ 6, 7

*Miccosukee Tribe of Indians of Fla. v. United States,* 877 F.Supp.2d 1331 (S.D. Fla. 2012)...................... 7, 15

*Poulis-Minott v. Smith,* 388 F.3d 354 (1st Cir. 2004)..............................................23

*Quinones Candelario v. Postmaster General,* 906 F.2d 798 (1st. Cir. 1990)............7

*Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296 (1946)...........................11

*Smith v. Bayer Corp.,* 131 S.Ct. 2368 (2011) ...........................................................6

*Taylor v. United States,* 417 F.2d 991 (5th Cir. 1969) .............................................12

*Tucker v. Hubner,* 129 F.Supp. 110 (S.D. Cal. 1955)..............................................20

*United States v. Carey,* 218 F.Supp. 298 (D. Del. 1963) .........................................20

*United States v. Coopers & Lybrand,* 550 F.2d 615 (10th Cir. 1977) ........................6

*United States v. Gertner,* 65 F.3d 963 (1st Cir. 1995)........................................ 3, 21

*United States v. Goldman,* 637 F.2d 664 (9th Cir. 1980) ...........................................6

*United States v. Jones,* 581 F.2d 816 (10th Cir. 1978) ..............................................8

*United States v. Morales-Aldahondo,* 524 F.3d 115 (1st Cir. 2008). .......................22

*United States v. Powell,* 379 U.S. 48 (1964) ...................................................... 3, 9

*United States. v. Arthur Young Co.,* 465 U.S. 805 (1984) ..........................................5

*Vento v. Dir. of VI Bureau of Internal Revenue,* 715 F.3d 455 (3d Cir. 2013) ...................... 14, 15

*Western Oil & Gas Ass'n v. EPA,* 633 F.2d 803 (9th Cir. 1980)...............................10

**Statutes**

28 U.S.C. § 636(b)(1) ...................................................................................................7

IRC § 932(c)(4) ............................................................................................................9

IRC § 6501 ........................................................................................................................9

IRC § 7525 ......................................................................................................................14

IRC § 7602(a) ...................................................................................................................5

IRC § 7602(c) ............................................................................................................. 8, 20

IRC § 7605(b) ............................................................................................................. 3, 23

IRC § 7609(b) ...................................................................................................................6

IRC § 7609(e) .................................................................................................................12

**Other Authorities**

*National Taxpayer's Advocate's 2009 Report to Congress* ..............................................11

Fuerst Ittleman David & Joseph, PL
1001 Brickell Bay Drive, 32ND Floor, Miami, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

## ARGUMENT

**COMES NOW,** Petitioners Frank Gangi, Ferrous Miner Holdings, Ltd. (Ferrous), BABP, LLC (BABP), Chesapeake Investment Services, Inc. (Chesapeake), and Global NAPs, Inc. (Global NAPs) (collectively Petitioners) hereby submit the following memorandum of law in support of the their Petition to Quash IRS Third Party Summonses, as ordered by the Court on January 16, 2014.

### I.   Background

In March and April 2010, Respondent, via the Internal Revenue Service of the Department of the Treasury (hereinafter "IRS" or "Respondent"), served four third-party summonses in relation to the alleged tax liability of the Petitioners.   Specifically, in or about March and April 2010 Respondent served a third-party summons on Ed Taylor, CPA, South Coastal Bank, John O. Postl, Esq., and Oliver Fowlkes, Esq.

### A.   Summons to Ed Taylor

The summons issued to Ed Taylor was dated February 25, 2010.  It was served March 18, 2010, and required compliance on April 6, 2010.  The Taylor summons sought documents and information relating to the "Gangi Accounts," a term defined in the summons as accounts maintained under the names Frank Gangi, Ferrous, BABP, and Global NAPs, for the period from December 31, 1999 to January 31, 2005.

### B.   Summons to South Coastal Bank

The summons served on South Coastal Bank was dated April 12, 2010, was served April 19, 2010, and required compliance with the summons on May 19, 2010.  The summons sought documents and information regarding accounts held or controlled by Gangi, from December 1, 1999 to January 31, 2005, documents demonstrating Gangi's residential and business addresses, documents concerning meetings between Gangi and the bank, documents relating to services provided by the bank to Gangi, and tax and legal opinions the bank provided to Gangi.  Under the

1

terms of the summons, "Gangi" was defined to include Frank Gangi, any other entity owned, controlled, or managed by Frank Gangi, BABP, or any Controlled Affiliates (defined to include all entities which Frank Gangi in any way owned, controlled, or was able to execute authority over).

### C.   Summons to John Postl

The summons served on Postl was dated April 12, 2010, served April 14, 2010, and required compliance on May 18, 2010.  The summons sought numerous documents relating to "Gangi."  The term "Gangi" was defined to include Frank Gangi, Global NAPs, Ferrous, Chesapeake, BABP, and any other "Controlled Affiliates."  The term "Controlled Affiliates" was in turn defined to include all entities which Frank Gangi in any way owned, controlled, or was able to execute authority over. Based on this definition of "Gangi," the summons sought documents relating to Gangi's residency, the Controlled Affiliates operations in the United States Virgin Islands ("USVI"), Gangi's residential and business addresses, meetings between Postl and Gangi, services provided by Postl to Gangi, Gangi's assets, and other documents seeking information about Gangi and/or the Controlled Affiliates.

### D.  Summons to Oliver Fowlkes

The summons served on Fowlkes was dated April 21, 2010, was served on April 28, 2010, and required compliance on May 21, 2010.  The summons sought documents regarding Gangi's attempt to adopt a child, legal services provided by Fowlkes to Gangi, Gangi's residence in the USVI, US, or elsewhere, Gangi's residential and business addresses, meetings between Fowlkes and Gangi.  For purposes of the summons, the term "Gangi" was defined to include Frank Gangi, and any "Controlled Affiliates," which in turn was defined to include all entities which Frank Gangi in any way owned, controlled, or was able to execute authority over.

Each of the four summonses stated that it was in the matter of the "United States Income Tax Liability of Frank Gangi."

Fuerst Ittleman David & Joseph, PL
1001 Brickell Bay Drive, 32ND Floor, Miami, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

### E.  Petitions to Quash

In April and May 2010, Petitioners filed petitions to quash each of the four third-party summonses served by Respondent.  In each petition, Petitioners asserted five primary arguments. These five arguments were based on Respondent's failure to meet the minimum standard for issuance of a valid, enforceable third-party summons, specifically: (1) the investigation must be conducted for a legitimate purpose; (2) the summons may be relevant to that purpose; (3) the IRS does not already have the information sought; and (4) in issuing and serving the summons, the IRS has followed the proper administrative procedures.  *United States v. Powell,* 379 U.S. 48 (1964); *United States v. Gertner,* 65 F.3d 963, 966 (1st Cir. 1995).

*First*, Petitioners asserted that the summonses were not issued for a proper purpose because the statute of limitations for the tax years at issued (2000-2004) had expired.

*Second*, Petitioners asserted that the documents sought were not relevant to the summonses' purposes.

*Third*, Petitioners asserted that they were not provided advance notice that third parties would be contacted regarding Petitioners' tax liability, and thus Respondent's had failed to follow proper administrative procedures.

*Fourth*, Petitioners asserted that by pursuing information regarding tax years already closed by the statute of limitations, Respondent abused the summons process.

*Fifth*, Petitioners asserted that Respondent's summonses violate IRC § 7605(b), which prohibits unnecessary examinations or investigations, because the IRS's audit of Mr. Gangi had been going on for six years at the time the summonses at issue were served.

### F.  New Jersey Litigation

Paralleling to this case, near in time to service of the four summonses at issue in this litigation, similar third-party summonses were served by Respondent on two banks, CitiBank and

3

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

Sovereign Bank, also seeking documents and information regarding Petitioner Gangi and the entity Petitioners. The issuance of those summonses precipitated petitions to quash in the United States District Court for the District of New Jersey (hereinafter the "New Jersey Litigation"). The summonses and petitions to quash at issue in the New Jersey Litigation were similar, but not identical, to the summonses and petitions to quash at issue before the Court.

The summons issued to CitiBank requested all correspondence, records, applications, statements, and other documents relating to CitiBank accounts under the names Frank Gangi, Ferrous, BABP, and Global NAPs for the period between December 31, 1999 and December 31, 2004. The Sovereign Bank summons sought documents (including applications, statements, tax withholding forms, and use authorizations) relating to accounts held or controlled by Gangi, documents evidencing Gangi's residential and business addresses, documents concerning meetings with Gangi, documents relating to services provided to Gangi, and tax and legal advice provided to Gangi. For the purpose of the Sovereign Bank summons, "Gangi" was defined to include Frank Gangi, BABP, and any Controlled Affiliates (defined to include all entities which Frank Gangi in any way owned, controlled, or was able to execute authority over).

In the New Jersey Litigation a Magistrate Judge issued an order (construed as a Report and Recommendation) on Petitioners' arguments in seeking to quash the two petitions, the District Court modified the Report and Recommendation and entered an order granting in part and denying in part the petitions. The Third Circuit Court of Appeals affirmed the District Court's order. *Gangi v. United States*, 2011 WL 1363816 (D.N.J. Jan. 7, 2011) *aff'd*, 453 F. App'x 255 (3d Cir. 2011).

In light of the New Jersey Litigation, in addition to deciding Petitioners' petitions to quash, this Court must make the initial determination of whether, if at all, the doctrine of issue preclusion dictates the resolution of the petitions before this Court. Petitioners assert that (1) due to the factual and legal distinctions between the petitions at issue in the New Jersey Litigation and those before

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

the Court, issue preclusion is inapplicable; (2) Based on the reasons set forth in Petitioners' petitions to quash, Respondent failed to satisfy at least three of the *Powell* factors, and thus Petitioners are entitled to an order quashing the four summonses at issue before this Court; and (3) even if issue preclusion is applicable, Respondent failed to follow the proper administrative procedures and violated IRC § 7605(b) in issuing and serving the four summonses at issue, and thus the summonses should be quashed on that basis.

## II.    Applicable Law

IRC § 7602(a) permits the IRS to "examine any books, papers, records, or other data" that will assist it in "ascertaining the correctness of any return," determine the liability of any person for any internal revenue tax, or collect such liability.

As set forth above, the principal case on summons enforcement is *Powell*. The *Powell* factors have been clarified through the years in a manner that favors protection of taxpayers seeking to quash administrative third-party summonses. More specifically, subsequent Supreme Court case law requires the IRS to have a "realistic expectation, rather than an idle hope that something may be discovered" when issuing a summons. *United States. v. Arthur Young Co.,* 465 U.S. 805, 813 & n. 11 (1984). Further, the IRS does not have the right to engage in carte blanche discovery via the summons process, *see United States v. Coopers & Lybrand,* 550 F.2d 615, 619 (10th Cir. 1977), and a mere assertion of relevance regarding the sought after information is insufficient to meet the *Powell* standard. *United States v. Goldman,* 637 F.2d 664, 667 (9th Cir. 1980).

## III.    Legal Argument

### A.    Issue Preclusion

Issue preclusion prevents a party from re-litigating issues that have been previously adjudicated. *Mangella v. Evanston Ins. Co.,* 700 F.3d 585, 591 (1st Cir. 2012). Traditionally, the application of issue preclusion required the satisfaction of four elements: (1) the issue raised in the

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

two actions is the same; (2) the issue was actually litigated in the earlier action; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was necessary to the judgment. *FleetBoston Fin. Corp. v. Alt*, 638 F.3d 70, 79 (1st Cir. 2011). "Under modern preclusion doctrine, the central question is whether a party has had a full and fair opportunity for judicial resolution of the same issue." *Id.* Generally, for issue preclusion to apply, the prior court must have decided an issue "the same as the one presented in this case." *Smith v. Bayer Corp.,* 131 S.Ct. 2368, 2376 (2011). The issues in the two cases must be "in substance identical." *Mangella,* 700 F.3d at 591. When a "meaningful difference" exists with regard to the issue resolved in the previous case and the issue as presented in the current case, issue preclusion is inappropriate. *See Mangella, supra.*

As a threshold matter, Petitioners contend that the doctrine of issue preclusion should be applied sparingly, if at all, in a proceeding to quash a summons. "Moreover, res judicata should not be invoked when its application would not serve its underlying purposes or goals." *Quinones Candelario v. Postmaster General,* 906 F.2d 798 (1st. Cir. 1990). To give preclusive effect to arguments raised in a petition to quash would be to disregard the unique nature of each summons and the clear statutory right to petition the District Court to quash each summons that is served with regard to the taxpayer. Specifically, IRC § 7609(b) states that "[n]otwithstanding any other law or rule of law, any person who is entitled to notice of a summons…shall have the right to begin a proceeding to quash *such* summons…." By referring to *such* summons, the statute accepts and endorses the principle that each summons issued by Respondent is unique and must be analyzed in its own particular context.

Reluctance to apply the doctrine of issue preclusion to a proceeding seeking to quash a third-party summons should be particularly strong when there is no clear First Circuit precedent authorizing the application of issue preclusion in this context. *See Miccosukee Tribe of Indians of Fla. v. United States,* 877 F.Supp.2d 1331, 1335 (S.D. Fla. 2012) (refusing to apply issue preclusion in

6

proceeding to quash a summons, *despite the fact that summonses in each case were identical*, because each summons raised new facts and the Eleventh Circuit Court of Appeals had not expressly authorized the application of issue preclusion in that context.).

If the Court chooses to conduct an issue preclusion analysis with respect to the issues raised in the four petitions before the Court, it is necessary to analyze what precisely was determined in the New Jersey Litigation. At the outset it is important to note that a Report and Recommendations of a Magistrate Judge is not binding until their acceptance by the District Judge. *See United States v. Jones,* 581 F.2d 816, 818 (10th Cir. 1978); 28 U.S.C. § 636(b)(1). Hence, the Magistrate Judge's Report and Recommendation in the New Jersey Litigation was superseded by the District Court's order and opinion. The District Court in the New Jersey Litigation made the following conclusion:

> Having conducted *de novo* review and determined that the summonses satisfy the Powell standard, to the extent that they seek information regarding Petitioner Gangi, the Court will adopt Magistrate Judge Arpert's Report and Recommendation with modifications, and the Court will grant the Government's motion to enforce in part (Doc. No. 4). Because the Court finds that the IRS did not comply with the administrative requirements of the Internal Revenue Code with respect to Petitioners Ferrous Miner and BABP, the Court will grant the petitions to quash (Doc. Nos.1, 5) in part and require the Government to comply with the advance-notice requirements of IRC § 7602(c) as described above. The portion of the R & R finding no violation of the IRC statute of limitations will be vacated.

*Gangi*, 2011 WL 1363816, *9.

On appeal, the Third Circuit reviewed only two issues,[1] both of which relate to the statute of limitations arguments raised by Petitioners. First, the Third Circuit held that: "[s]ince the dispute in this case concerns summonses and not assessments, the § 6501 statute of limitations upon which Gangi relies is inapplicable to the summonses at issue. Therefore, any due process claims based on

---

[1] Initially the Government appealed and Gangi cross-appealed. The Government subsequently dismissed its appeal and only Gangi's cross appeal was litigated.

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

the expiration of the statute of limitations must fail. [fn. 1]" *Gangi v. United States*, 453 F. App'x 255, 257 (3d Cir. 2011).  Footnote 1 stated:

> IRC § 6501(c)(1)–(3) also provides exceptions for false returns, willful attempts to evade tax, and the failure to file a return. If the IRS determines that Gangi was not a bona fide resident of the Virgin Islands, then he was obligated to file U.S. federal tax returns. *It is uncontested that Gangi did not file U.S. federal tax returns for the period at issue.* It follows that the statute of limitations would not preclude the summonses for purposes of determining the applicability of these exceptions

*Id.* (emphasis added); *see Appleton, infra.*

Second, the Third Circuit held that the IRS's discriminatory application of the statute of limitations to USVI residents—the statute of limitations applies only for those taxpayers with gross income under $75,000—is not sufficient to constitute "bad faith" under *Powell*. *Id.* at 258.  The Third Circuit did not address whether Mr. Gangi's bank records were relevant to the issue of his residency, nor did it address the District Court's holding that failure to provide advance notice to Mr. Gangi's wholly owned entities violated IRC § 7602(c).

Petitioners contend that even if the doctrine of issue preclusion is generally proper in the context of a proceeding to quash a summons, this Court is not precluded from resolving the issues raised in the four petitions to quash due to the factual distinctions between the cases and developments in the applicable law since the New Jersey Litigation closed.  However, to the extent the Court does find that the doctrine of issue preclusion is applicable, this Court should hold, as the District of New Jersey held, that Respondent violated IRC § 7602(c) with respect to Chesapeake. Additionally, it is important to note that the New Jersey District Court did not squarely decide the IRC § 7605(b) issue raised in the petitions to quash currently before the Court, and thus issue preclusion is clearly not applicable in that regard.

### 1.  Legal Distinctions Barring the Application of Issue Preclusion

The legal landscape applicable to the petitions to quash has changed significantly since the resolution of the New Jersey Litigation.  "An intervening judicial pronouncement may change the

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

legal atmosphere to such a degree as to render application of collateral estoppel inapplicable." *Commissioner v. Sunnen,* 333 U.S. 591, 599 (1947); *see also Western Oil & Gas Ass'n v. EPA,* 633 F.2d 803, 809 (9th Cir. 1980).

In *Appleton v. Comm'r,* 140 T.C. No. 14 (2013), the Tax Court held that when a United States Virgin Islands ("USVI") resident filed a return with the USVI taxing authority (the Bureau of Internal Revenue ("BIR")) for tax years 2002-2004, the statute of limitations under IRC § 6501 started to run, and the IRS had three years from the date of the BIR filing to assess the tax.  In so holding, the Tax Court relied on the Form 1040 instructions, which explicitly stated that USVI residents are to file their returns with the BIR, rather than the IRS.  *Appleton* represents judicial affirmation, in the face of fierce IRS resistance, that USVI residents meeting the requirements of IRC § 932(c)(4) have a single filing obligation—with the BIR—and are not exposed to deficiency determinations mailed more than three years after their BIR filing deadline.

The *Appleton* decision altered the legal landscape that provided the context for the New Jersey District Court and the Third Circuit, and therefore renders issue preclusion inapplicable to those Courts' holdings on the statute of limitations issue raised in Petitioners' petition to quash. Indeed, the Third Circuit noted that: "[i]t is uncontested that Gangi did not file U.S. federal tax returns for the period at issue," *Gangi,* 453 F. App'x at 257 fn. 1, but the *Appleton* decision held that the filing of an income tax return with the BIR *was a federal tax return for the periods at issue.   See Appleton,* at *8 ("The Secretary, using the authority expressly granted to him by section 6091(b)(1)(B), promulgated section 1.6091–3(c), Income Tax Regs., which requires taxpayers like petitioner, residing in a possession of the United States, to file their tax returns as designated on the return forms or in the instructions issued with respect to those forms. The instructions to Form 1040 are explicit: The form is to be filed with the BIR.").

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

A definitive statement by the Tax Court, or any other Court, on the issue was not in existence at the time the New Jersey District Court and the Third Circuit entered their decisions. With a definitive resolution of the issue in place, the analysis of the District and Circuit courts on the statute of limitations issue is insufficient. The District Court held, and the Third Circuit agreed, that IRC § 6501(a)'s three year limitation for assessment is not a limitation on summons issuance. However, in light of the Tax Court's definitive ruling in *Appleton*, permitting the IRS to issue a summons for tax years well in excess of the statute of limitations for assessments completely eviscerates the purpose of the statute of limitations.

In *Rothensies v. Elec. Storage Battery Co.*, the Supreme Court held that a statute of limitation is "an almost indispensable element of fairness as well as of practical administration of an income tax policy." *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 301 (1946); *see also Fruit of the Loom, Inc. v. Comm'r*, 72 F.3d 1338, 1342 (7th Cir. 1996), ("[t]he statute of limitations is a fundamental and essential legal rule that cannot be easily ignored"). The purpose of the statute of limitations is to prevent a tax system under which there would never be a final settlement in tax claims, and both the government and the taxpayer would always have to be ready to "produce vouchers, prove events, establish values and recall details" of all past events, no matter how old, that went into an income tax dispute. *Rothensies*, 329 U.S. at 301; *see also First Nat'l Bank of Pa. v. Comm'r*, 205 F.2d 82, 84 (3d Cir.1953) ("an adjustment of [taxpayer's] 1921 return would necessarily require recomputations of all its returns from that year through 1942. If the statute of limitations has any purpose it is to prevent such practices."). It is beyond cavil that the purpose of statutes of limitation on assessment is "to give the Government additional time to *investigate* tax returns." *Taylor v. United States*, 417 F.2d 991, 993 (5th Cir. 1969)(emphasis added). But Respondent has had nine years to investigate Petitioners' returns and tax liabilities, and yet it still clamors for more time and greater authority to intrude into

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

Petitioners' private affairs. At some point an examination must end, and that time for the IRS investigation into Mr. Gangi was long ago.

Absent the commission of fraud,[2] a taxpayer is rightfully entitled to consider a tax year closed after the statute of limitations has run. Further, banks, financial institutions, and other third parties are entitled to a clear and finite period of time in which they are required to retain documents relating to their clients. Completely divorcing the time period in which summons can reasonably be issued by the IRS, from the period of limitations applicable to the tax years at issue, undercuts both of these fundamental goals of imposing periods of limitation on assessment and collection. Under the Respondent's interpretation, a third-party summons could be issued for any tax year, regardless of how long ago the year closed, and regardless of whether the record discloses any indicia of fraud. This Court should reject such a proposition of law as it has no limiting principle. Taking the Government's position to its logical end, the IRS could issue a summons for any tax year. The Government's power in investigating taxpayer's tax liability is substantial, but it is not unlimited.

Nina Olsen, the IRS Taxpayer Advocate, stated in her 2009 annual report to Congress that: "the IRS has singled out a small group of USVI taxpayers for special treatment – the very types of high income taxpayers that federal tax incentives are seeking to attract to the USVI – by effectively eliminating the [statute of limitations] applicable to them but not the [statute of limitation] applicable to other similarly situated taxpayers." *National Taxpayer's Advocate's 2009 Report to Congress* at 391-392, *available at* http://www.irs.gov/pub/irs-utl/2_09_tas_arc_vol_1_lr.pdf. Ms. Olsen also noted that: "the IRS has, without legislation, upset longstanding expectations by singling out for special treatment those taxpayers with gross incomes of more than $75,000 who are claiming USVI residency. For many taxpayers the [statute of limitations] will not begin (or end) for tax years ending

---

[2] In this case there has never been any allegation of fraud.

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

before December 31, 2006, even if they have properly filed nonfraudulent returns and have not

claim [USVI tax] benefits." *Id.* at 397.

　　　　Further, Ms. Olsen noted:

> For a year and a half, the National Taxpayer Advocate has been
> requesting specific data regarding USVI cases.  Only after it became
> evident that she would publicly discuss this lack of transparency did
> the IRS provide any USVI data to [the Taxpayer Advocate].  The
> IRS's repeated failure to provide such information to [the Taxpayer
> Advocate], an entity designed by Congress to protect taxpayer rights,
> is cause for concern.  Without transparency of statutory limits on the
> IRS's exercise of discretion in conducting audits of a certain group of
> USVI residents for an unlimited period of time, taxpayer rights are at
> risk.

*Id.* at 398-399.  Ms. Olsen's statements came *before* the *Appleton* decision.  Thus, even in the absence

of determinative judicial guidance on the issue of when the limitations period began, the prevailing

feeling was that certain USVI taxpayers were being improperly subjected to IRS scrutiny through the

IRS intentionally disregarding the statute of limitations.  In light of the definitive ruling in *Appleton*

that a USVI resident's statute of limitations begins to run once the return is filed with the BIR,

Respondent's actions in this case—continuing to investigate Petitioners well after the close of the

limitations period—constitute precisely the behavior of which Ms. Olsen made Congress aware and

exemplify Respondent's lack of a legitimate purpose and bad faith in this matter.  It is the role of the

Federal Courts to serve as a check on the executive overreach and abuse of process demonstrated by

Respondent in this context.

　　　　The *Appleton* decision must also be considered in light of IRC § 7609(e), which tolls the

limitations period for assessments if the party whose liability is the subject of the assessment

challenges the summons under IRC § 7609(b).  Since the *Appleton* decision places the impetus on the

IRS to assess liabilities of USVI taxpayers within the normal limitations period, allowing the IRS to

issue a summons with nothing more than a naked assertion that it is investigating a potential tax

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

liability will, in turn, improperly allow the IRS to issue baseless summonses solely as an artifice to extend the statute of limitations.

In light of the definitive statement set forth in *Appleton* that a USVI resident complies with all filing obligations by filing a income return with the BIR, the legal landscape with regard to the statute of limitations issues raised in Petitioners' petitions to quash has changed significantly, thereby rendering issue preclusion on those issues inappropriate.

Similarly, recent case law has altered the legal landscape with regard to the determination of whether a taxpayer is a USVI resident. Specifically, the Third Circuit in *Vento v. Dir. of VI Bureau of Internal Revenue*, 715 F.3d 455 (3d Cir. 2013) altered the analysis undertaken when determining whether a taxpayer is a resident of the USVI by emphasizing that a desire to avoid taxes does not undermine a claim of bona fide residency. *Vento*, 715 F.3d at 471. The *Vento* Court went so far as to say a taxpayer's sincere desire to avoid taxes *would support* a finding of intent to establish residency in the USVI. *Vento*, 715 F.3d at 472. Additionally, the *Vento* Court further emphasized that subjective factors based on the taxpayer's perspective are the key to determining USVI residency. The Court in *Vento* focused largely on the Ventos' subjective intent to remain the USVI, the Ventos' subjective motivations for moving to the USVI, and the extent to which the Ventos' self-identified as USVI residents. The renewed emphasis on the subjective intent and beliefs of the taxpayer in determining residency alters the relevancy determination applicable to the petitions at issue.

In this case the questions is not whether Mr. Gangi had a residence in the 50 States, instead the question is did he resided in the USVI? *See Vento*, 715 F.3d at 466 ("[f]urthermore, while a person can have only one domicile, he can be a resident of multiple places at the same time."). For that reason, the relevancy determination undertaken in the New Jersey Litigation should not be adopted by this Court; rather, this Court should review the relevancy determination with a fresh perspective and in light of the renewed emphasis on subjective factors as set forth in *Vento*.

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

### 2.   Factual Distinctions Barring the Application of Issue Preclusion

Factual distinctions between the previously and yet to be decided cases are sufficient to bar the application of issue preclusion.   *See Miccosukee Tribe, supra.*   In this case, factual distinctions abound between the summonses at issue and those in the New Jersey Litigation.

*First*, in the New Jersey Litigation, both of the summonses were served on banks.   Here, conversely, three of the four at-issue summonses were served on individuals.   More particularly, two of those individuals worked as an attorney for either Mr. Gangi or a wholly-owned entity of Mr. Gangi, and the third is a CPA.   This fact obviously raises significant issues regarding Respondent's attempt to breach both the attorney-client privilege and the IRC § 7525 privilege that were not present in the New Jersey litigation, which dealt solely with subpoenas served on banks.

*Second*, the scope and focus of the subpoenas at issue in this litigation is different than the scope and focus of summonses in the New Jersey Litigation.   The summonses issued in the New Jersey Litigation sought bank statements, account applications, check copies, wire transfer records, and similar documents.   Conversely, the summonses served on Taylor, Postl, and Fowlkes in the present litigation seek information largely concerning services provided by those individuals to Frank Gangi or entities relating to Gangi, meetings with Gangi, meeting minutes of the Petitioner entities, and tax advice provided to Gangi or one of the entity-petitioners.   Given the disparity between the documents sought in the New Jersey Litigation and the documents and information sought in the summonses to Taylor, Postl, Fowlkes, a relevancy determination under the second prong of the *Powell* test cannot be borrowed from the New Jersey Litigation.

*Third*, the entities related to Frank Gangi and listed in the summonses vary between the New Jersey Litigation and the summonses before this Court.   For instance, neither of the summonses in the New Jersey Litigation reference Chesapeake, while that entity is specifically named in the summonses issued to Postl and South Coastal bank.

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

*Fourth*, the temporal scope of the summonses in the New Jersey Litigation varies from the temporal scope of the summonses before this Court.  For instance, the CitiBank summons sought bank records from between December 31, 1999 and December 31, 2004 whereas the South Coastal Bank summons before the Court seeks bank records from December 1, 1999 to December 31, 2005.

The differences in temporal scope, the entities named in each summons, and the third-party receiving each summons bear directly on the relevancy and proper purpose elements of the *Powell* test.  These differences make issue preclusion based on the New Jersey Litigation improper; these issues must be decided on their own merits and with proper regard to their unique context and circumstances.  These factual distinctions alone should preclude the application of issue preclusion to the instant petitions.

Therefore, due to the numerous factual distinctions between the petitions at issue in the New Jersey Litigation and those presently before the Court, and due to the drastic change in the applicable legal landscape, the application of issue preclusion to the petitions before the Court based on the resolutions reached in the New Jersey Litigation is improper.  Rather, this Court should review the arguments raised by Petitioners on a blank slate and determine that the summonses should be quashed because (1) the summonses were not issued for a proper purpose due to the fact that the statute of limitations began to run at the time Gangi's returns were filed with the BIR; (2) the documents sought by Respondent are not relevant to a determination of residency; (3) disregarding the statute of limitations for residents of the USVI with more than $75,000 in income for the year constitutes an abuse of process; (4) Respondent failed to follow proper administrative procedures; and (5) the other arguments previously raised by Petitioners, including the institutional bad faith displayed by Respondent in continuing to enforce disparate statutes of limitations based on income level, and Respondent's violation of the attorney-client privilege through its summons issuance.

Fuerst Ittleman David & Joseph, PL
1001 Brickell Bay Drive, 32ND Floor, Miami, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

B.      Failure to Follow Administrative Procedures

Even if the Court determines that issue preclusion dictates the resolution of the statute of limitation and relevancy issues, the summonses should still be quashed because Respondent failed to follow the required administrative procedures when issuing the summons, thus violating the fourth *Powell* element.  This is so for two reasons.

First, Respondent failed to provide advance notice to the taxpayers whose liability is the subject of Respondent's investigation as required by IRC § 7602(c).  Second, by continuing to pursue summons investigation nine years after the close of the last tax year at issue (2004), Respondent has violated IRC § 7605(b).

### 1.      Violation of IRC 7602(c)

IRC § 7602(c) requires the IRS to provide advance notice to a taxpayer if the IRS intends to contact a third party with respect to the determination or collection of the tax liability of the taxpayer.  In the New Jersey Litigation, the District Court determined that Respondent violated § 7602(c) because it did not notify BABP or Ferrous prior to contacting CitiBank or Sovereign Bank.  *See Gangi*, 2011 WL 1363816, *8 ("[t]he Court is not persuaded that contemporaneous notice of Ferrous Miner and BABP under IRC § 7609 suffices, because Ferrous Miner and BABP are currently 'taxpayers' under investigation, and the summonses sought documents from third-parties that would be relevant to an assessment of their tax liabilities.").  The District Court flatly rejected Respondent's argument that notice to Mr. Gangi personally was sufficient to provide notice to his wholly-owned entities.  *Id.*  ("[t]o permit advance notice of one taxpayer to satisfy the advance-notice requirements with regard to other taxpayers under investigation, even where those taxpayers are entities wholly-owned by the taxpayer under investigation, would undercut the public policy advanced by IRC § 7602(c). The failure to provide the advance notice required by IRC § 7602(c) defeats the fourth prong of the *Powell* test, and precludes enforcement of the summonses in a

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

manner that would reveal information regarding against Ferrous Miner and BABP.").  The District Court reasoned that in enacting § 7602(c) Congress recognized that IRS involvement can have a negative effect on a taxpayer's business and professional relationships, and thus thought it necessary to allow taxpayers the opportunity to resolve their issues or provide the sought-after information before third parties were contacted.  *Id.*

Here, Respondent failed to provide advance notice to Chesapeake prior to issuing the third party summonses as the audit notice for Chesapeake was dated April 6, 2010, and required a response from Chesapeake on April 13, 2010, whereas the summons were dated April 12, 2010.  The objective evidence is clear – the summonses were issued *before* the taxpayer was to respond.  Thus, Respondent violated § 7602(c) in precisely the same manner that occurred in the New Jersey Litigation.  Thus, to the extent this Court holds that issue preclusion is applicable, then issue preclusion must apply equally to quash Respondent's summonses to the extent they seek information about Chesapeake.

Further, given the manner in which the summonses are written, such that Chesapeake is consistently grouped together with Ferrous, BABP, and Global NAPs under the definitions of "Gangi" or the "Controlled Affiliates," distinguishing between information that relates to Chesapeake, but not the other entities that did receive advance notice, is impractical.  Information provided by one entity may also constitute information regarding Chesapeake to which Respondent is not entitled due to its failure to provide Chesapeake with advance notice.  In essence, under the summonses, Chesapeake has become inextricably intertwined with the other Petitioner entities and thus Respondent's summonses should be quashed with regard to all of the Petitioner entities.

Respondent's summonses either specifically reference the petitioner-entities or encompass them in the definitions of "Gangi" or "Controlled Affiliates" set forth in the summonses.  The summonses are clear that they are seeking information regarding the petitioner-entities, including

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

information that could lead to the determination that the petitioner-entities have tax liabilities.  It is beyond dispute that these entities were entitled to advance notice prior to contact being made with any third-parties.  By failing to do so, Respondent violated IRC § 7602(c).

That this result is correct under the law has been emphasized by recent case law.  In *Huff v. Comm'r,* 138 T.C. 258 (2012), the Tax Court held that for tax years prior to 2006, USVI LLCs or similar pass-through entities whose members are all USVI residents are to be taxed as "associations"—in essence, corporations separate and apart from their owners.  BABP VI, LLC is a USVI pass-through entity and thus is classified as a corporation under the Internal Revenue Code.  The *Huff* decision removes any doubt as to whether wholly-owned entities like BAPB VI, LLC in this case are entitled to separate, advanced notice before any third parties are contacted regarding their tax liability.

### 2.      Violation of IRC § 7605(b)

In addition to violating IRC § 7602(c), Respondent's continued efforts to seek enforcement of the four subpoenas at issue violates IRC § 7605(b).  That Code provision states: "[n]o taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

By continuing its investigation efforts for tax years *that closed, at the earliest, nine years ago,* Respondent has violated this Code provision.  It is important to note that neither the District Court nor the Third Circuit in the New Jersey Litigation squarely addressed this issue, and thus issue preclusion is inapplicable to the resolution of this issue.  Further, to determine whether an investigation is considered unnecessary, and thus prohibited by § 7605(b), the facts of each case, on their own, must be considered.  *Tucker v. Hubner,* 129 F.Supp. 110 (S.D. Cal. 1955); *United States v.*

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

*Carey,* 218 F.Supp. 298 (D. Del. 1963).  Thus, to the extent the New Jersey District Court's decision can implicitly be read as repudiating the argument that Respondent violated § 7605(b) with the CitiBank and Sovereign Bank summonses, issue preclusion is nevertheless inapplicable.

Respondent has been investigating Petitioners' liabilities since 2004.  There is no indication of any gross value misstatement or fraud on any tax return (and thus no basis to extend the period of limitations), and Respondent has never articulated any such claim.  Nevertheless, Respondent continues to improperly pry into Petitioners' business, professional, and personal relationships.  For over three years, Respondent has done nothing with regard to the summonses, instead allowing Petitioners to wait and go about their business while the IRS sword of Damocles hangs over their heads.  Petitioners' appeal to this Court's discretion to restrain Respondent's investigatory efforts under § 7605(b) and quash the summonses at issue in this proceeding.

## C.    The Affidavit is Stale and Boilerplate

When an IRS summons is challenged, the IRS must make a prima facie showing that it is acting in good faith and for a lawful purpose.  This is generally done via the submission of an affidavit of the investigating agent attesting to satisfaction of the *Powell* elements.  *Gertner*, 65 F.3d at 966.  Then, and only then, does the burden shift to the taxpayer to produce specific evidence of the IRS's failure to meet the *Powell* elements.

Here, Respondent has submitted affidavits sworn to and executed by Revenue Agent Jackie Moss in support of its opposition to Petitioners' petition to quash the summons issued to Postl and Taylor.  The record does not indicate that any affidavits were submitted in support of the summonses issued to either Fowlkes or South Coastal Bank.  For that reason, Petitioners contend that the IRS has failed to establish even prima facie good faith with regard to the Fowlkes or South Coastal summonses, and thus those summonses should be quashed.

19

The affidavit in support of the Postl summons was executed by Agent Moss on September 28, 2010.  In the affidavit, Agent Moss makes the following time-sensitive averments:

a. Mr. Gangi directly or indirectly owns 100% of petitioners BABP VI, Ferrous Miner Holdings, Ltd., and Chesapeake Investment Services.  BABP, Ferrous, and Chesapeake are flow-through entities that file either Form 1120S or Form 1065 and provide a Form K-1 to Mr. Gangi, through which he reports their incomes on his personal Form 1040.  Petitioner Global NAPs, Inc. is wholly owned by Ferrous Miner. ¶ 3.

b. As of the date of this declaration, no "Justice Department referral," as defined in 26 U.S.C 7602(d), is in effect with respect to Mr. Gangi for the 2000, 2001, 2002, and 2004 income tax years.  ¶ 12.

c. To my knowledge, the information sought by the summons from John O. Postl is not already in the possession of the IRS.  ¶ 15.

Respondent also submitted an affidavit of Agent Moss, executed in June 2010, which was largely identical in substance in support of its opposition to Petitioners' petition to quash the summons issued to Ed Taylor.

The affidavits of Agent Moss submitted with regard to the Postl and Taylor summonses are stale and thus invalid.  "In evaluating a claim of staleness, the Court does not simply count the days that have elapsed" but must instead assess the "nature of the information," the likelihood it will endure, and "the nature and characteristics of the…activity" described in the affidavit. *United States v. Morales-Aldahondo,* 524 F.3d 115, 119 (1st Cir. 2008).  The three time-sensitive averments set forth above could have easily changed within the past three and half years since the affidavits were executed.  The truth of the averments, which are essential to Respondent meeting its burden under *Powell*, is not known at this time.  These affidavits cannot properly be relied upon by Respondent to establish, even at a prima facie level, that the requirements of *Powell* have been satisfied.

Further, the affidavits submitted in support of the summonses issued to Postl and Taylor are insufficient as a matter of law to carry the IRS's prima facie burden because they consist of boilerplate legal conclusions.  Specifically, the affidavits state that the three elements of the *Powell*

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

test (proper purpose, relevancy, and that all required administrative steps were followed) had been satisfied.

In addition, the conclusory legal statements made in the Moss affidavit (i.e. "all legally required administrative steps for issuance of the summons were followed," (¶ 16) and "the investigation…is being conducted pursuant to a proper purpose," (¶ 13)) assume the state of the law as it then existed.  As set forth *supra*, the relevant legal landscape has undergone significant changes, particularly through the *Appleton* and *Vento* decisions.  Even setting aside the fact that in almost any other context (e.g. Fed. R. Civ. P. 56(e)) conclusions of law carry no weight in an affidavit, *see Poulis-Minott v. Smith,* 388 F.3d 354 (1st Cir. 2004), the law upon which Agent Moss based her affidavit averments is no longer controlling.

In sum, because it has been over three years since the summonses were issued, both the factual and legal averments contained in Agent Moss's affidavits are no longer reliable.  Combined with Respondent's failure to submit separate affidavits in support of the Fowlkes and South Coastal Bank summonses, Respondent has failed, with regard to each of the four summonses at issue before the Court, to establish the necessary prima facie showing that it acted in good faith and with proper purpose in issuing the summonses.

**IV.   Conclusion**

For the reasons set forth herein, in Petitioners' petitions to quash, and in Petitioners' Response to Respondents' Motion to Deny Petitioners' Petitions to Quash, Petitioner respectfully requests the entry of an order quashing all for summonses at issue in this proceeding.

/

/

/

/

FUERST ITTELMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

Respectfully Submitted,

_____

Joseph A. DiRuzzo, III                                                    Dated:  Jan. 31, 2014
Fla. Bar # 0619175; USVI Bar # 1114
*Admitted Pro Hac Vice*
FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 Brickell Bay Drive, 32nd Floor
Miami, Florida 33131
305.350.5690 (O)
305.371.8989 (F)
jdiruzzo@fuerstlaw.com

*Counsel for the Petitioners*

FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned hereby certifies that a true and correct copy of the foregoing was filed on ECF on Jan. 31, 2014, and a NEF will be delivery upon the following:

Edward J. Murphy                       Jennifer A. Serafyn
U.S. Department of Justice            United States Attorney's Office
Tax Division                             Suite 9200
Box 55 Benjamin Franklin Station      1 Courthouse Way
Washington, DC 20044               Boston, MA 02210
Email: Edward.J.Murphy@usdoj.gov   Email: jennifer.serafyn@usdoj.gov

Respectfully Submitted,

_____

Joseph A. DiRuzzo, III                         =
Fla. Bar # 0619175; USVI Bar # 1114
*Admitted Pro Hac Vice*
Fuerst Ittleman David & Joseph, PL
1001 Brickell Bay Drive, 32nd Floor
Miami, Florida 33131
305.350.5690 (O)
305.371.8989 (F)
jdiruzzo@fuerstlaw.com

*Counsel for the Petitioners*

Fuerst Ittleman David & Joseph, PL
1001 Brickell Bay Drive, 32nd floor, Miami, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • www.fuerstlaw.com